# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-20-00554-CV

**D. S. and K. S. S., Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY
### NO. 19-0083-CPSC1, THE HONORABLE BRANDY HALLFORD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants D.S. (Father) and K.S.S. (Mother) appeal from the district court's order, following a bench trial, terminating their parental rights to five-year-old K.S. (the child). Counsel for each parent has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967). We will affirm the district court's order of termination.

The case began in August 2019, when the Texas Department of Family and Protective Services (the Department) received a report alleging neglectful supervision of the child by Father and Mother. The report alleged that Father and Mother had engaged in domestic violence and that the child had witnessed the violence. In September 2019, the Department received a second report of neglectful supervision of the child by Father and Mother, this time alleging that Father and Mother had used methamphetamine in a motel room while the child was present. Father and Mother were arrested for possession of a controlled substance and the child

was removed from their care. A hair follicle test was performed on the child upon her removal from Father and Mother, and the child tested positive for methamphetamine.

The evidence presented at trial showed that Father had an extensive criminal history, including convictions for possession of methamphetamine, attempted forgery, misdemeanor theft, failure to identify as a fugitive, and a second conviction for possession of methamphetamine, which had occurred while this case was ongoing. In his testimony at trial, Father admitted to methamphetamine use but denied committing domestic violence against Mother. Father was ordered to complete various services during the case, including the completion of a substance abuse program. Father failed to complete the program and failed to complete other court-ordered services, including individual therapy, anger management, a batterer's intervention program, and protective parenting classes. Father tested positive for methamphetamine on one occasion during the pendency of the case and failed to appear for other scheduled drug tests.

Mother testified at trial that she was aware of Father's illegal-drug use because she and Father would use drugs together. The drugs that Mother used included methamphetamine, marijuana, and cocaine. Mother claimed that the last time she had used drugs was in October 2019, although she admitted to using marijuana "probably about two months ago." Mother testified, "I don't count marijuana as a drug." As part of Mother's court-ordered services, she was ordered to submit to drug testing on a regular basis. However, Mother failed to appear or submit a sample for 22 of the 27 tests that she was ordered to take. Mother completed some court-ordered services but failed to complete others, including parenting classes, anger management, and individual therapy.

2

Mother denied that any physical violence had occurred between her and Father. However, the Department confronted Mother with a written statement that she gave to the police following the alleged domestic-violence incident in 2019. In the statement, Mother wrote that during a verbal altercation with Father in which she tried to call 911 from a motel room, Father ripped the phone from the wall, pinned Mother to the wall and shoved her face against it, and injured Mother's hand by forcefully pulling from her hand a shoe that she had been holding. Mother responded by hitting and biting Father. When asked if her statement to the police was true, Mother acknowledged, "The statement is true. The whole statement is true." Mother added that Father had broken her finger during the incident.

The Department placed the child with Mother's sister (Aunt). Department caseworker Erin Weaver testified that the child had bonded with Aunt and called her "mom." The child also had bonded with Aunt's husband and called him "dad." Aunt and her husband wanted to adopt the child, and the child had told CASA volunteer Karen Chase that she wanted to spend "the rest of her life" with Aunt. Chase testified that the child was "very happy where she is at" and that Aunt could provide the child with "a stable home" and "meet her needs and wants." Aunt testified that she loved the child and that she and her husband were willing to be a long-term placement for the child.

At the conclusion of trial, the district court found by clear and convincing evidence that termination of Father's and Mother's parental rights was in the best interest of the child and that Father and Mother had: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child; and (3) failed to

3

comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the child. *See* Tex. Fam. Code § 161.001(b)(1)(E), (O), (2). The district court further found that Father had used a controlled substance in a manner that endangered the health or safety of the child and failed to complete a court-ordered substance abuse treatment program. *See id*. § 161.001(b)(1)(P). This appeal by each parent followed.

Court-appointed counsel for each parent has filed an *Anders* brief and a motion to withdraw as counsel, concluding that the appeal is frivolous and without merit. *See* 386 U.S. at 744; *In re P.M.*, 520 S.W.3d 24, 27 & n.10 (Tex. 2016) (per curiam) (approving use of *Anders* procedure in appeals from termination of parental rights because it "strikes an important balance between the defendant's constitutional right to counsel on appeal and counsel's obligation not to prosecute frivolous appeals" (citations omitted)). Each brief meets the requirements of *Anders* by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds to be advanced on appeal. *See* 386 U.S. at 744; *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646-47 (Tex. App.—Austin 2005, pet. denied). Each counsel has certified to this Court that they have provided their client with a copy of the *Anders* brief and informed them of their right to examine the appellate record and to file a pro se brief. No pro se brief has been filed by either parent.

Upon receiving an *Anders* brief, we must conduct a full examination of the record to determine whether the appeal is wholly frivolous. *See Penson v. Ohio*, 488 U.S. 75, 80 (1988); *Taylor*, 160 S.W.3d at 647. We have reviewed the entire record, including the *Anders* brief submitted on each parent's behalf. We have found nothing in the record that might arguably support an appeal, and we agree that the appeal is frivolous. Accordingly, we affirm

4

the district court's order terminating Father's and Mother's parental rights. We deny each counsel's motion to withdraw.[1]

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Triana, and Kelly

Affirmed

Filed: February 24, 2021

---

[1] The Texas Supreme Court has held that the right to counsel in suits seeking termination of parental rights extends to "all proceedings [in the Texas Supreme Court], including the filing of a petition for review." *In re P.M.*, 520 S.W.3d 24, 27-28 (Tex. 2016) (per curiam). Accordingly, if after consulting with counsel either parent desires to file a petition for review, that parent's counsel should timely file with the Texas Supreme Court "a petition for review that satisfies the standards for an *Anders* brief." *See id.*